Grand Lodge (Sup.) 29 N. Y. Supp. 773; Matthews v. Associated Press, 136 N. Y. 333, 342, 32 N. E. 981, 32 Am. St. Rep. 741.

The judgment appealed from should be affirmed, with costs. All concur.

---

(69 App. Div. 563.)

### FAY v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   March 14, 1902.)

1. QUESTION FOR JURY—WEIGHT OF EVIDENCE.
   There being some evidence in support of plaintiff's claim, the question whether the weight of evidence is with defendant is for the jury.

2. ACCIDENT AT STREET RAILWAY CROSSING—NEGLIGENCE—EVIDENCE. ·
   Testimony that plaintiff drove forward to go over a street railway crossing at signal from the company's inspector, and that as the horses got on the track the inspector signaled a car to cross, and plaintiff pulled back as far as he could, but, there being a curve in the track, the rear of the car swung out and struck the team, is sufficient for a finding that the accident resulted from negligence of the inspector; it not necessarily following that the front of the car would swing out equally far at that point, so that plaintiff must have advanced after the front got by.

3. SAME—CONTRIBUTORY NEGLIGENCE.
   Whether a person in a team at a street car crossing, who, because of a curve in the track, was struck by the rear end of street car swinging out, was guilty of contributory negligence in not turning to one side, after he had backed as far as a car in the rear would allow, is a question for the jury.

Appeal from trial term, Kings county.

Action by John Fay, an infant, by Mary Hyland, his guardian ad litem, against the Brooklyn Heights Railroad Company. From judgment dismissing the complaint on the merits, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

William O. Miles, for appellant.

I. R. Oeland, for respondent.

HIRSCHBERG, J.   The judgment in this case cannot be sustained, inasmuch as there was some evidence in support of the plaintiff's claim.   It may be that the weight of evidence was with the defendant, but it was the province of the jury, and not of the court, to determine that question.   The action is for damages arising from the alleged negligence of the defendant, and, if the statement of the plaintiff is believed, a case was made out.   Some evidence was given on behalf of the defendant tending either directly or by inference to contradict the plaintiff's version of the occurrence, but the issue raised was clearly a question of fact, and not of law.   That, under such circumstances, it was error to take the case from the jury, has been often decided, and quite recently in the case of McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282.   On this appeal the plaintiff is entitled not only to the most favorable inferences deducible from the evidence, but all disputed facts are to be treated as established in his favor.   Bank v. Weston, 159 N. Y. 201, 54 N. E. 40, 45 L. R. A.

75 N.Y.S.—8

547; Place v. Railroad Co., 167 N. Y. 345, 60 N. E. 632. His account of the occurrence is therefore to be regarded as the true one. He testified that he drove off the Brooklyn Bridge at the Brooklyn end after dark on the 9th day of January, 1900, and turned to the left, the accident occurring at the corner of Sands and Washington streets as he was about to cross the defendant's track. He claims to have acted in accordance with the directions of the defendant's inspector there stationed, and that the accident was due to the negligence of the inspector. The latter was dead at the time of the trial, and the plaintiff's evidence in this regard was uncontradicted. He testified:

"As I got to the corner of Washington and Sands, the inspector told me to come ahead, and just as I started to come— A car passed down before the inspector motioned to me. I let that car pass. My wagon was standing still. I did not start before the inspector gave me the signal. The inspector gave me the signal to start, and just as I had my horse right on the first track he waved to the motorman to go ahead,—the motorman of the car coming down Washington street that hit me. At the time the inspector motioned to me to start across, it was stopped. Then I started to go ahead, and I just had my horse right on the first track, and he beckoned for the car to come ahead. I seen the motorman turn on the full power, and I pulled back again. As soon as I pulled back, the motorman hit the wagon,—hit the shafts and threw my horse,—dragged my horse, and he fell, and the wagon upset on the two left wheels. Upset on just the two left wheels,—lifted the wheels sideways, and threw me out. I fell on my back and head."

He further testified that there was a curve in the track at this point; that he could back his horse no further than he did because another car was on the track behind him; and that it was the rear of the car that struck his shafts as it swung around in going about the curve. This testimony established a case which would have clearly justified the conclusion that the accident resulted from the negligence of the inspector in directing the plaintiff to drive upon the track, and while he was there also directing the motorman to proceed with his car. The negligence imputed to the inspector may, indeed, be so gross that the jury would doubt its existence, but the plaintiff was entitled to have the question submitted to their judgment. In dismissing the complaint, the learned trial justice said:

"Wherein do you say the defendant is guilty of any negligence? Mr. Miles: The inspector, in inviting the young man to cross, was the negligence; and it was the duty of the motorman to stand till this young man had crossed with his wagon. The Court: The motorman started his car according to the statement of the boy, and he simply thought he could cross ahead of it without injury, and then he pulled his horse back to let the car pass him. The car passed him at the rear end, and it caught in some way in the shaft, and pulled the horse around. That is the practical effect of his testimony. Did he suffer any injury by reason of what the inspector had said to him? Mr. Miles: Well, he acted upon what the inspector told him. The Court: The front end of the car would make the same circle as the rear end. I do not think there is anything here to justify the jury in finding a verdict for the plaintiff here at all. The complaint will be dismissed."

In addition to the limited view of the scope of the plaintiff's evidence adopted by the court, the dismissal of the complaint was possibly influenced to some extent by the oversight in the suggestion that in going around a curve the rear end of the car would describe the same circle as the front end. Of course, if the plaintiff had back-

ed sufficiently from the track to enable the front end of the car to pass him safely, and the rear end could make no wider outward circle at any point than the front end did, the accident, as he states it to have occurred, would be a physical impossibility, and the consequent rejection of his evidence by the court would be justified. But it is very evident that in going around a curve at the commencement of the turn the ends of the car swing in opposite directions. If the front end turns to the right, the rear will swing to the left, and vice versa. There is no impossibility, therefore, involved in the plaintiff's statement that he was at a place where the front and side of the car passed without touching his horse or shafts, but that the rear end, in swinging around the curve, swung out and struck him. The learned counsel for the defendant urges in his brief that:

"There is no proof on the part of the plaintiff that he did not know this curve was there, and, if the car swung around as he has described it at folio 45, there should be some proof to exonerate him from standing there, and allowing the car to swing around and hit him. It is true he says that he could not back any further; that there was another car behind him. But he does not say that he could not turn to one side. He does not say that he did not know that this curve was there."

All this bears on the question of contributory negligence only, and has no relation to the ground upon which the complaint was dismissed. And, as bearing upon the question of contributory negligence, it presents a question for the jury to determine, viz., whether the plaintiff acted with due care under the circumstances, and is not deemed, under the authorities, sufficient to charge the plaintiff with contributory negligence as matter of law. The judgment should accordingly be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur.